FILED
August 31, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002896221

THOMAS E. MAY
CHAPTER 7 TRUSTEE
5098 FOOTHILLS BLVD. 3-484
ROSEVILLE, CA 95747
(916) 740-4329

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

Sacramento Division

In re:
ADAMS, GEORGIA JOANN

,Debtor

**CASE NO. 09-30531-B-7**

**DCN: TEM-01**
**DATE: October 4, 2010**

**TIME: 9:00 a.m.**
**DEPT: B, Courtroom 28, Seventh Floor**

# TRUSTEE'S MOTION TO SELL THE ESTATE'S INTEREST IN REAL PROPERTY

Thomas E. May, Bankruptcy Trustee herein, respectfully represents:

1. ADAMS, GEORGIA JOANN ("Debtor") filed a Chapter 7 petition on 05/26/09.

2. Thomas E. May has been appointed the Chapter 7 Trustee herein.

3. The Debtor has listed in her amended bankruptcy schedules, Schedule A, an interest in rental properties ,(two duplexes on one parcel) located at 8940-8942 Eva Ave.& 9620-9622 Adams Ave. Elk Grove, California, 95624 (APN: 125-0144-001-000), "subject property", with an estimated value of $251,000.00. The Debtor has exempted zero (00.00) for her asset.

4. The Trustee has investigated subject property and has determined that the property has no liens other than property taxes and a judgment lien.

5. The Trustee believes that the property is worth $365,000.00 based on recent comparable sales. Given such economics after normal real estate commission and other closing costs, the net proceeds of the sale from estates interest in the real property is worth approximately $224,000.00 (see Exhibit 1).

6. The Trustee has received an offer from Timothy Albiani and Kathleen Albiani ("Buyer") to purchase the estate's interest in the property for $365,000.00 (Exhibit 2). The "Buyers" have also submitted with the offer a letter of reference and commitment from their lender. The offer is subject to any and all liens currently filed against the property. The Trustee believes that a $365,000.00 offer is in the best interest of the bankruptcy estate. The Trustee realizes that an all cash offer is most desired for the estate. Taking into consideration that this is a full price offer, and "Buyers" are financially strong with bank references, moves the Trustee to conclude that this offer is in the best interests of the estate. The transaction is subject to overbid in the incremental amount of at least $2,000.00 or as the U.S. Bankruptcy Court directs.

**WHEREFORE**, Thomas E. May respectfully requests:

1. The Court approve the sale of the estate's interest in real property located at 8940-8942 Eva Ave.& 9620-9622 Adams Ave. Elk Grove, California, 95624 (APN: 125-0144-001-000) (County of Sacramento) subject to any and all filed liens currently filed against the real property to Timothy Albiani and Kathleen Albiani for $365,000.00.

2. For such other and further relief as the court deems appropriate.

DATED: August 31, 2010

Thomas E. May
Chapter 7 Trustee

Exhibit 1.

Adams case No. 09-30531
8940-8942 Eva Ave & 9620-9622 Adams Ave. Elk Grove CA. 95624
Two Duplexes on one corner parcel no. APN: (125-0144-001-000)
Economics of Sale

| | | Lowest | Highest |
|---|---|---|---|
| Current Marketable Price | | 255,000.00 | 370,000.00 |
| less selling commission and title exp. 8% | | 20,400.00 | 29,600.00 |
| less judgement lien | | 72,000.00 | 72,000.00 |
| less Property Tax | | 3,500.00 | 3,500.00 |
| less cost of tax return preparation | | 1,700.00 | 1,700.00 |
| Possible estate proceeds | | 157,400.00 | 264,900.00 |
| Capital Gain basis and Tax on Basis | 70,847.00 | 24,037.95 | 39,907.95 |
| net proceeds to estate creditors | | 133,362.05 | 224,992.05 |

| | |
|---|---|
| Cost of Land | 24,226.00 |
| Cost of Building | 137,279.00 |
| Prior Depreciation | (66,432.00) |
| Basis for Capital Gain calculation | 70,847.00 |

tm 08/18/10



Aug 25 10 02:59p Tim and Kathy Albiani 916-482-7372 p.2

# RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

(C.A.R. Form RIPA, Revised 4/10)

Date: *August 25, 2010*

1. OFFER:
   A. THIS IS AN OFFER FROM *TIMOTHY ALBIANI, KATHLEEN ALBIANI* ("Buyer"). ☐ Individual(s), ☐ A Corporation, ☐ A Partnership, ☐ An LLC, ☐ An LLP, ☐ Other
   B. THE REAL PROPERTY TO BE ACQUIRED is described as *8940-8942 EVA AVE & 9620-9622 ADAMS*, Assessor's Parcel No. *125-0144-001*, situated in, County of *Sacramento*, California, ("Property").
   C. THE PURCHASE PRICE offered is *Three Hundred Sixty-Nine Thousand* (Dollars $ *369,000.00*).
   D. CLOSE OF ESCROW shall occur on (date) (or ☐ *45* Days After Acceptance).
2. AGENCY:
   A. POTENTIALLY COMPETING BUYERS AND SELLERS: Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer representational agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.
   B. CONFIRMATION: The following agency relationships are hereby confirmed for this transaction: Listing Agent *LYON REAL ESTATE* (Print Firm Name) is the agent of (check one): ☐ the Seller exclusively; or ☒ both the Buyer and Seller. Selling Agent *LYON REAL ESTATE* (Print Firm Name) (if not the same as the Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☒ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
   C. DISCLOSURE: If the Property contains 1-4 residential dwelling units, Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."
3. FINANCE TERMS: Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Deposit shall be in the amount of ........ $ *5,000.00*
      (1) Buyer shall deliver deposit directly to Escrow Holder by personal check, ☐ electronic funds transfer, ☐ Other ______ within 3 business days after acceptance (or ☐ Other ______);
      OR (2) (If checked) ☐ Buyer has given the deposit by personal check (or ☐ ______) to the agent submitting the offer (or to ☒ *within 3 days of acceptance*), made payable to *TITLE COMPANY*. The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder (or ☐ into Broker's trust account) within 3 business days after Acceptance (or ☐ Other ______).
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of ... $ ______ within ______ Days After Acceptance, or ☐ ______. If a liquidated damages clause is incorporated into this Agreement, Buyer and Seller shall sign a separate liquidated damages clause (C.A.R. Form RID) for any increased deposit at the time it is deposited.
   C. LOAN(S):
      (1) FIRST LOAN in the amount of ........ $ *240,000.00*
      This loan will be conventional financing or, if checked, ☒ FHA, ☐ VA, ☐ Seller (C.A.R. Form SFA), ☐ assumed (C.A.R. Form PAA), ☐ subject to financing, ☐ Other ______. This loan shall be at a fixed rate not to exceed ______ % or, ☐ an adjustable rate loan with initial rate not to exceed ______ %. Regardless of the type of loan, Buyer shall pay points not to exceed ______ % of the loan amount.
      (2) ☐ SECOND LOAN in the amount of ........ $ ______
      This loan will be conventional financing or, if checked, ☐ Seller (C.A.R. Form SFA), ☐ assumed (C.A.R. Form PAA), ☐ subject to financing, ☐ Other ______. This loan shall be at a fixed rate not to exceed ______ % or, ☐ an adjustable rate loan with initial rate not to exceed ______ %. Regardless of the type of loan, Buyer shall pay points not to exceed ______ % of the loan amount.
      (3) FHA/VA: For any FHA or VA loan specified above, Buyer has 17 (or ☐ ______) Days After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or repair. Seller has no obligation to pay for repairs or satisfy lender requirements unless otherwise agreed in writing.
   D. ADDITIONAL FINANCING TERMS: *BUYER TO SECURE A LOAN FROM A LENDER OF BUYERS CHOICE A PREVAILING MARKET RATES. CASH & LOAN TO EQUAL PURCHASE PRICE*
   E. BALANCE OF PURCHASE PRICE OR DOWN PAYMENT in the amount of ........ $ *124,000.00* to be deposited with Escrow Holder within sufficient time to close escrow.
   F. PURCHASE PRICE (TOTAL): ........ $ *369,000.00*
   G. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS: Buyer (or Buyer's lender or loan broker pursuant to 3H(1)) shall, within 7 (or ☐ ______) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. (If checked, ☐ verification attached.)

Buyer's Initials ( *[initials]* ) ( *[initials]* ) Seller's Initials ( ______ ) ( ______ )

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1998-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

RIPA REVISED 4/10 (PAGE 1 OF 10)

Reviewed by ______ Date ______

RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 1 OF 10)

Agent: Gil Albiani Phone: 916.683.6600 Fax: 916.238-4362 Prepared using zipForm® software
Broker: Lyon Real Estate, Elk Grove 9591 Laguna Springs Drive Elk Grove, CA 95758

Property Address: *8940-8942 EVA AVE & 9620-9622 ADAMS* Date: *August 25, 2010*

H. LOAN TERMS:

(1) LOAN APPLICATIONS: Within 7 (or ☐ ________ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in 3C above. (If checked, ☐ letter attached.)

(2) LOAN CONTINGENCY: Buyer shall act diligently and in good faith to obtain the designated loan(s). Obtaining the loan(s) specified above is a contingency of this Agreement unless otherwise agreed in writing. Buyer's contractual obligations to obtain and provide deposit, balance of down payment and closing costs are not contingencies of this Agreement.

(3) LOAN CONTINGENCY REMOVAL:

(i) Within 17 (or ☐ ________ ) Days After Acceptance, Buyer shall, as specified in paragraph 18, in writing remove the loan contingency or cancel this Agreement;

OR (ii) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.

(4) ☐ NO LOAN CONTINGENCY (If checked): Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

(5) ASSUMED OR SUBJECT TO FINANCING: Seller represents that Seller is not delinquent on any payments due on any loans. If Property is acquired subject to an existing loan, Buyer and Seller are advised to consult with legal counsel regarding the ability of an existing lender to call the loan due, and the consequences thereof.

I. APPRAISAL CONTINGENCY AND REMOVAL: This Agreement is (or, if checked, ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the specified purchase price. If there is a loan contingency, Buyer's removal of the loan contingency shall be deemed removal of this appraisal contingency (or, ☐ if checked, Buyer shall, as specified in paragraph 18B(3), in writing remove the appraisal contingency or cancel this Agreement within 17 (or ________ ) Days After Acceptance). If there is no loan contingency, Buyer shall, as specified in paragraph 18B(3), in writing remove the appraisal contingency or cancel this Agreement within 17 (or ☐ ________ ) Days After Acceptance.

J. ☐ ALL CASH OFFER (If checked): Buyer shall, within 7 (or ☐ ________ ) Days After Acceptance, Deliver to Seller written verification of sufficient funds to close this transaction. (If checked, ☐ verification attached.)

K. BUYER STATED FINANCING: Seller has relied on Buyer's representation of the type of financing specified (including but not limited to, as applicable, amount of down payment, contingent or non contingent loan, or all cash). If Buyer seeks alternate financing, (i) Seller has no obligation to cooperate with Buyer's efforts to obtain such financing, and (ii) Buyer shall also pursue the financing method specified in this Agreement. Buyer's failure to secure alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

4. ALLOCATION OF COSTS (If checked): Unless otherwise specified in writing, this paragraph only determines who is to pay for the inspection, test or service ("Report") mentioned; it does not determine who is to pay for any work recommended or identified in the Report.

A. INSPECTIONS AND REPORTS:

(1) ☐ Buyer ☒ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Wood Pest Report") prepared by ________ a registered structural pest control company.

(2) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected ________.

(3) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity ________.

(4) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by ________.

(5) ☐ Buyer ☐ Seller shall pay for the following inspection or report ________.

(6) ☐ Buyer ☐ Seller shall pay for the following inspection or report ________.

B. GOVERNMENT REQUIREMENTS AND RETROFIT:

(1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer written statements of compliance in accordance with state and local Law, unless exempt.

(2) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. ________.

(3) ☐ Buyer ☒ Seller shall pay for installation of approved fire extinguisher(s), sprinkler(s), and hose(s), if required by Law, which shall be installed prior to Close Of Escrow. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance, if required by Law.

(4) ☐ Buyer ☐ Seller shall pay for installation of drain cover and anti-entrapment device or system for any pool or spa meeting the minimum requirements permitted by the U.S.Consumer Products and Safety Commission.

C. ESCROW AND TITLE:

(1) ☒ Buyer ☒ Seller shall pay escrow fee *50% TO EACH PARTY* ________.
Escrow Holder shall be ________.

(2) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 18 ________.
Owner's title policy to be issued by ________.
(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

D. OTHER COSTS:

(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee ________.

(2) ☐ Buyer ☐ Seller shall pay City transfer tax or fee ________.

(3) ☐ Buyer ☐ Seller shall pay Homeowner's Association ("HOA") transfer fee ________.

(4) ☐ Buyer ☐ Seller shall pay HOA document preparation fees ________.

(5) ☐ Buyer ☒ Seller shall pay the cost, not to exceed $ ________, of a one-year home warranty plan, issued by *AMERICAN HOME SHEILD - FLEX PLAN* with the following optional coverages:
☐ Air Conditioner ☐ Pool/Spa ☐ Code and Permit upgrade ☐ Other: ________.
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

(6) ☐ Buyer ☐ Seller shall pay for ________.

(7) ☐ Buyer ☐ Seller shall pay for ________.

Buyer's Initials ( *[initials]* ) ( *[initials]* ) Seller's Initials ( ________ ) ( ________ )

Copyright © 1998-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Property Address: 8940-8942 EVA AVE & 9620-9622 ADAMS Date: August 25, 2010

5. CLOSING AND POSSESSION:

A. Buyer ☐ intends (or ☐ does not intend) to occupy any unit in the Property as Buyer's primary residence.

B. Seller-occupied or vacant property: Possession shall be delivered to Buyer at 5 PM or (☐ ______ ☐ AM ☐ PM) on the date of Close Of Escrow; ☐ on ______; or ☐ no later than ______ Days After Close Of Escrow. If transfer of title and possession do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement (C.A.R. Form PAA, paragraph 2); and (ii) consult with their insurance and legal advisors.

C. Tenant occupied units: Possession and occupancy, subject to the rights of tenants under existing leases, shall be delivered to Buyer on Close Of Escrow.

D. At Close Of Escrow, (i) Seller assigns to Buyer any assignable warranty rights for items included in the sale, and (ii) Seller shall Deliver to Buyer available Copies of warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

6. SECURITY DEPOSITS: Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the California Civil Code.

7. ~~STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:~~

A. LEAD-BASED PAINT HAZARD DISCLOSURES:

(1) Seller shall, within the time specified in paragraph 18, deliver to Buyer, if required by Law, Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"). If the Lead Disclosures are delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After Delivery in person, or 5 Days After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

(2) Buyer shall, within the time specified in paragraph 18, return a Signed Copy of the Lead Disclosure to Seller.

B. NATURAL AND ENVIRONMENTAL HAZARDS: Within the time specified in paragraph 18, Seller shall, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; and (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

C. WITHHOLDING TAXES: Within the time specified in paragraph 18A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law, (C.A.R. Form AS or QS).

D. MEGAN'S LAW DATABASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

8. RESIDENTIAL 1 - 4 PROPERTIES: STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:

A. (1) Seller shall, within the time specified in paragraph 18A, deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice of actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or SSD).

(2) Buyer shall, within the time specified in paragraph 18B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.

(3) If any disclosure or notice specified in 8A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After Delivery in person, or 5 Days After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.

9. SELLER DOCUMENTATION AND ADDITIONAL DISCLOSURE: Within the time specified in paragraph 18, Seller shall disclose, make available or Deliver, as applicable, to Buyer the following information:

A. RENTAL/SERVICE AGREEMENTS: Seller shall make available to Buyer for inspection and review: (i) all current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; (ii) a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any rebate, concession, or other benefit, except as set forth in these documents. Seller represents that the documents to be furnished are those maintained in the ordinary and normal course of business.

B. INCOME AND EXPENSE STATEMENTS: Seller shall make available to Buyer the books and records for the Property, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.

C. ☐ TENANT ESTOPPEL CERTIFICATES: (If checked) Seller shall Deliver to Buyer tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: (i) that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); (ii) that no lessor defaults exist; and (iii) stating the amount of any prepaid rent or security deposit.

D. SURVEY, PLANS, AND ENGINEERING DOCUMENTS: Seller shall, at no cost to Buyer, Deliver to Buyer Copies of surveys, plans, specifications, and engineering documents, if any, prepared on Seller's behalf or in Seller's possession.

E. PERMITS: If in Seller's possession, Seller shall Deliver to Buyer Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.

Buyer's Initials ( ______ ) ( ______ ) Seller's Initials ( ______ ) ( ______ )

Copyright © 1998-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Property Address: 8940-8942 EVA AVE & 9620-9622 ADAMS Date: August 25, 2010

F. STRUCTURAL MODIFICATIONS: Seller shall disclose to Buyer in writing any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.

G. SELLER REPRESENTATION: Seller represents that Seller has no actual knowledge: (i) of any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property or the right to use and occupy it; (ii) of any unsatisfied mechanic's or materialman lien(s) affecting the Property; and (iii) that any tenant of the Property is the subject of a bankruptcy. If Seller receives any such notice prior to Close Of Escrow, Seller shall immediately notify Buyer.

H. GOVERNMENTAL COMPLIANCE:

(1) Seller shall disclose to Buyer any improvements, additions, alterations, or repairs to the Property made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.

(2) Seller shall disclose to Buyer if Seller has actual knowledge of any notice of violations of Law filed or issued against the Property.

10. SUBSEQUENT DISCLOSURES: In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly Deliver a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.

11. CHANGES DURING ESCROW:

A. Prior to Close Of Escrow, Seller may engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 18B: (i) rent or lease any vacant unit or other part of the premises; (ii) alter, modify or extend any existing rental or lease agreement; (iii) enter into, alter, modify or extend any service contract(s); or (iv) change the status of the condition of the Property.

B. At least 7 (or ☐ __________ ) Days Prior to any Proposed Changes, Seller shall Deliver written notice to Buyer of such Proposed Changes.

12. CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:

A. SELLER HAS: 7 (or ☐ __________ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or SSD).

B. If Property is a condominium or is located in a planned development or other common interest subdivision, Seller has3 (or ☐ __________ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOA's governing the Property (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 18B(3).

13. ITEMS INCLUDED AND EXCLUDED:

A. NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 13B or C.

B. ITEMS INCLUDED IN SALE:

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms;

(3) A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 18.

(4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.

(5) Seller shall deliver title to the personal property by Bill of Sale, free of all liens and encumbrances, and without warranty of condition.

(6) As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.

C. ITEMS EXCLUDED FROM SALE: ______________________________

14. CONDITION OF PROPERTY: Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical ("as-is") condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as of the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Seller by Close Of Escrow.

A. Seller warrants that the Property is legally approved as __________ units.

B. Seller shall, within the time specified in paragraph 18, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

C. Buyer has the right to inspect the Property and, as specified in paragraph 18, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

D. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

15. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:

A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 18B. Within the time specified in paragraph 18B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the

Buyer's Initials ( [initials] ) ( [initials] ) Seller's Initials ( ______ ) ( ______ )

Copyright © 1993-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by ________ Date ________

Property Address: 8940-8942 EVA AVE & 9620-9622 ADAMS Date: August 25, 2010

attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 18B, complete Buyer Investigations and, either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

D. Buyer indemnity and Seller protection for entry upon property: Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs of Buyer's Investigations. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination or cancellation of this Agreement and Close Of Escrow.

16. SELLER DISCLOSURES; ADDENDA; ADVISORIES; OTHER TERMS:

A. Seller Disclosures (if checked): Seller shall, within the time specified in paragraph 18A, complete and Deliver to Buyer a:
[X] Seller Property Questionnaire (C.A.R. Form SPQ) OR [ ] Supplemental Contractual and Statutory Disclosure (C.A.R. Form SSD)

B. Addenda (if checked): [ ] Addendum # (C.A.R. Form ADM)
[ ] Wood Destroying Pest Inspection and Allocation of Cost Addendum (C.A.R. Form WPA)
[ ] Purchase Agreement Addendum (C.A.R Form PAA) [ ] Septic, Well and Property Monument Addendum (C.A.R. Form SWPI)
[ ] Short Sale Addendum (C.A.R. Form SSA) [ ] Other
[ ] Seller Intent to Exchange Supplement (C.A.R. Form SES) [ ] Buyer Intent to Exchange Supplement (C.A.R. Form BES)

C. Advisories (if checked): [ ] Buyer's Inspection Advisory (C.A.R. Form BIA)
[ ] Probate Advisory (C.A.R. Form PAK) [X] Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
[ ] Trust Advisory (C.A.R. Form TA) [ ] REO Advisory (C.A.R. Form REO)

D. Other Terms: 1) SELLER TO PROVIDE A COPY OF ALL RENTAL AGREEMENTS 2) BUYER TO BE CREDITED WITH ALL DEPOSITS HELD BY SELLER. 3) SALE IS SUBJECT TO INSPECTION OF THE INTERIORS.

17. TITLE AND VESTING:

A. Within the time specified in paragraph 18, Buyer shall be provided a current preliminary title report, which shall include a search of the General Index, Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information. The preliminary report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 18B.

B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

C. Within the time specified in paragraph 18A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

E. Buyer shall receive a standard coverage owner's CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about availability, desirability, coverage, survey requirements and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

18. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either buyer or seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. SELLER HAS: 7 (or [ ] ________) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 7A, B and C, 8A, 9, 12A, 13B(3), 14B, 16A and B, and 17. Buyer may give Seller a Notice to Seller to perform (C.A.R. Form NSP) if Seller has not Delivered the items within the time specified.

B. (1) BUYER HAS: 17 (or [ ] ________) Days After Acceptance, unless otherwise agreed in writing, to:
(i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all other matters affecting the Property; and
(ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures Delivered by Seller in accordance with paragraphs 7A or 8A.

(2) Within the time specified in 18B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

(3) Within the time specified in 18B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller either (i) a removal of the applicable contingency (C.A.R. Form CR), or (ii) a cancellation (C.A.R. Form CC) of this Agreement based upon a remaining contingency or Seller's failure to Deliver the specified items. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in 18A, then Buyer has 5 (or [ ] ________) Days After Delivery of any such items, or the time specified in 18B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

(4) Continuation of Contingency: Even after the end of the time specified in 18B(1) and before Seller cancels this Agreement, if at all, pursuant to 18C, Buyer retains the right to either (i) in writing remove remaining contingencies, or (ii) cancel this Agreement based upon a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to 18C(1).

Buyer's Initials ( [initials] ) ( [initials] ) Seller's Initials ( ________ ) ( ________ )

Reviewed by ________ Date ________

Copyright © 1998-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Property Address: 8940-8942 EVA AVE & 9620-9622 ADAMS Date: August 25, 2010

C. SELLER RIGHT TO CANCEL:

(1) Seller right to Cancel; Buyer Contingencies: If, within the time specified in this Agreement, Buyer does not in writing Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP) may cancel this Agreement. In such event, Seller shall authorize return of Buyer's deposit.

(2) Seller right to Cancel; Buyer Contract Obligations: Seller, after first Delivering to Buyer a NBP may cancel this Agreement for any of the following reasons: (i) if Buyer fails to deposit funds as required by 3A or 3B; (ii) if the funds deposited pursuant to 3A or 3B are not good when deposited; (iii) if Buyer fails to Deliver a notice of FHA or VA costs or terms as required by 3C(3) (C.A.R. Form FVA); (iv) if Buyer fails to Deliver a letter as required by 3H; (v) if Buyer fails to Deliver verification as required by 3G or 3J; (vi) if Seller reasonably disapproves of the verification provided by 3G or 3J; (vii) if Buyer fails to return Statutory and Lead Disclosures as required by paragraphs 7A(2) or 8A(2); or (viii) if Buyer fails to sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 34. In such event, Seller shall authorize return of Buyer's deposit.

(3) Notice To Buyer To Perform: The NBP shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 2 (or ☐ ________ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet an obligation specified in 16C(2).

D. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES: If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall with regard to that contingency or cancellation right conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections or for inability to obtain financing.

E. CLOSE OF ESCROW: Before Seller or Buyer may cancel this Agreement for failure of the other party to close escrow pursuant to this Agreement, Seller or Buyer must first Deliver to the other a demand to close escrow (C.A.R. Form DCE).

F. EFFECT OF CANCELLATION ON DEPOSITS: If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A Buyer or Seller may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

19. REPAIRS: Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

20. ENVIRONMENTAL HAZARD CONSULTATION: Buyer and Seller acknowledge: (i) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (ii) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (iii) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

21. AMERICANS WITH DISABILITIES ACT: The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. Residential properties are not typically covered by the ADA, but may be governed by its provisions if used for certain purposes. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

22. FINAL VERIFICATION OF CONDITION: Buyer shall have the right to make a final inspection of the Property within5 (or __________ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 14A; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. form VP).

23. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS: Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are a current lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are a current lien but not yet due. The Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Forms SPT or SBSA for further information). BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

Buyer's Initials ( [initials] ) ( [initials] ) Seller's Initials ( ________ ) ( ________ )

Copyright © 1996-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Property Address: 8940-8942 EVA AVE & 9620-9622 ADAMS Date: August 25, 2010

24. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

25. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

26. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

27. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 35A.

28. **DEFINITIONS:** As used in this Agreement:

A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.

B. "C.A.R. Form" means the specific form referenced or another comparable form agreed to by the parties.

C. "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded.

D. "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.

E. "Days" means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

F. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

G. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

H. "Deliver", "Delivered" or "Delivery", regardless of the method used (i.e. messenger, mail, email, fax, other), means and shall be effective upon (i) personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in paragraph D of the section titled Real Estate Brokers on page 8;

OR (ii) if checked, ☐ per the attached addendum (C.A.R. Form RDN).

I. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other party.

J. "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

K. "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

L. "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.

29. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interests in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld, unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement.

30. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

31. **COPIES:** Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

32. **BROKERS:**

A. **BROKER COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

B. **BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultations and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representation in this paragraph.

33. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 3, 4, 6, 7C, 16B and D, 17, 18F, 23, 28, 32A, 33, 37, 40, and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 32A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out of Buyer's or Seller's funds, or both, as applicable, the respective Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not specifically referenced above, in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

Buyer's Initials ( DVA ) ( KA ) Seller's Initials ( ______ ) ( ______ )

Copyright © 1986-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by ______ Date ______

Property Address: 8940-8942 EVA AVE & 9620-9622 ADAMS Date: August 25, 2010

B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ ________). Escrow Holder shall provide Seller's Statement of Information to Title company when the preliminary report is ordered. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs the Agreement.

C. Brokers are a party to the Escrow for the sole purpose of compensation pursuant to paragraph 32A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow, or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement. Escrow Holder shall immediately notify Brokers: (i) If Buyer's initial or any additional deposit is not made pursuant to this Agreement or is not good at time of deposit with Escrow Holder; or (ii) if either Buyer or Seller instruct Escrow Holder to cancel escrow.

D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

34. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF THE INCREASED DEPOSIT, BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT (C.A.R. FORM RID).**

Buyer's Initials ____ / ____ Seller's Initials ____ / ____

35. **DISPUTE RESOLUTION:**

A. **MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Buyer and Seller also agree to mediate any disputes or claims with Broker(s), who in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 35C.

B. **ARBITRATION OF DISPUTES:**

**Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. Buyer and Seller also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 35C.**

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials ____ / ____ Seller's Initials ____ / ____

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**

(1) **EXCLUSIONS:** The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.

(2) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

Buyer's Initials ( ____ ) ( ____ ) Seller's Initials ( ____ ) ( ____ )

Copyright © 1998-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by ________ Date ________

Property Address: 8940-8942 EVA AVE & 9620-9622 ADAMS Date: August 25, 2010

36. TERMS AND CONDITIONS OF OFFER: This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all parties initial such paragraph(s), a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

37. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES: Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

38. AUTHORITY: Any person or persons signing this Agreement represent(s) that such person has full power and authority to bind that person's principal, and that the designated Buyer and Seller has full authority to enter into and perform this Agreement. Entering into this Agreement, and the completion of the obligations pursuant to this contract, does not violate any Articles of Incorporation, Articles of Organization, Bylaws, Operating Agreement, Partnership Agreement or other document governing the activity of either Buyer or Seller.

39. ~~EXPIRATION OF OFFER: This offer shall be deemed revoked and the deposit shall be returned, unless the offer is Signed by Seller, and a Copy of~~ the Signed offer is personally received by Buyer, or by ______________________, who is authorized to receive it by 5:00 PM on the third Day after this offer is signed by Buyer (or, if checked ☐ by ______________ ☐ AM ☐ PM) on (date), ______________.

Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships.

Date August 25, 2010 | Date August 25 2010
BUYER Timothy V. Albiani | BUYER Kathy Albiani
By [signature] | By [signature]
Print name ______ | Print name ______
Title ______ | Title Mrs.
Address 4709 Loarell Court, Sacramento, CA 95864 | Address 4709 Loarell Ct, Sac, CA 95864

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

40. ACCEPTANCE OF OFFER: Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.

☐ (If checked) SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form CO), DATED ______________.

Date ______ | Date ______
SELLER ______ | SELLER ______
By ______ | By ______
Print name ______ | Print name ______
Title ______ | Title ______
Address ______ | Address ______

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

(______/______) (Initials) CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized agent on (date) ______________ at ______________ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

Buyer's Initials ( [initials] ) ( [initials] ) Seller's Initials ( ______ ) ( ______ )

Copyright © 1999-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Property Address: 8940-8942 EVA AVE & 9620-9622 ADAMS Date: August 25, 2010

**REAL ESTATE BROKERS:**

A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

B. Agency relationships are confirmed as stated in paragraph 2 above.

C. If specified in paragraph 3A(2), Agent who submitted offer for Buyer acknowledges receipt of deposit.

D. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker. Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) LYON REAL ESTATE DRE Lic. # ____
By ____ JENNIFER QUINN DRE Lic. # 01104601 Date ____
Address 9591 LAGUNA SPRINGS DRIVE City ELK GROVE State CA Zip 95758
Telephone (916) 683-6655 Fax (916) 236-4362 E-mail ____

~~Real Estate Broker (Listing Firm) LYON REAL ESTATE DRE Lic. #~~ ____
By ____ JOHN SHOOK DRE Lic. # ____ Date ____
Address 9591 LAGUNA SPRINGS DRIVE City ELK GROVE State CA Zip 95758
Telephone ____ Fax ____ E-mail JSHOOK@GOLYON.COM

**ESCROW HOLDER ACKNOWLEDGMENT:**

Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $____), counter offer(s) numbered ____ ☐ Seller's Statement of Information and ☐ Other ____ ____, and agrees to act as Escrow Holder subject to paragraph 33 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions, if any.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is ____

Escrow Holder ____ Escrow # ____
By ____ Date ____
Address ____
Phone/Fax/E-mail ____
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # ____

**PRESENTATION OF OFFER:** (____) Listing Broker presented this offer to Seller on ____ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** (____)(____) No counter offer is being made. This offer was rejected by Seller on ____ (date).
Seller's Initials

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ____ Date ____


Merrill Lynch
Wealth Management
Bank of America Corporation

CA2-507-03-01
3200 Douglas Boulevard
Suite 310
Roseville, CA 95661
Tel: 800.846.6262

Tim Albiani
Kathleen Albiani
4209 Loazell Ct
Sacramento, CA 95864

August 25, 2010

To whom it may concern,

This is a letter of reference for our clients Tim and Kathleen Albiani. They have been pre approved for a mortgage with Bank of America for a purchase up to the amount of $295,000 at a purchase price of $369,000 and are considered a strong buyer.

They have been clients of Bank of America in good standing since 2002.

I would appreciate it if you would provide them with favorable consideration. If you have further questions you may call me at (916) 878-3184.

Sue Callantine
Vice President
Senior Wealth Management Banker
3200 Douglas Blvd Ste 310
Roseville, CA 95661

Merrill Lynch Wealth Management makes available products and services offered by Merrill Lynch, Pierce, Fenner & Smith Incorporated and other subsidiaries of Bank of America Corporation. Banking products are provided by Bank of America, N.A. and affiliated banks. Members FDIC and wholly owned subsidiaries of Bank of America Corporation.
Investment products offered through Merrill Lynch, Pierce, Fenner & Smith Incorporated and insurance and annuity products offered through Merrill Lynch Life Agency Inc.:

| Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |
|---|---|---|
| Are Not Deposits | Are Not Insured by Any Federal Government Agency | Are Not a Condition to Any Banking Service or Activity |

Merrill Lynch, Pierce, Fenner & Smith Incorporated is a registered broker-dealer, member Securities Investor Protection Corporation (SIPC), and a wholly owned subsidiary of Bank of America Corporation. Merrill Lynch Life Agency Inc. is a licensed insurance agency and a wholly owned subsidiary of Bank of America Corporation.

© Recycled Paper

CALIFORNIA ASSOCIATION OF REALTORS®

# MARKET CONDITIONS ADVISORY

(C.A.R. Form MCA, 11/08)

**A. MARKET CONDITIONS:** Real estate markets are cyclical and can change over time. It is impossible to predict future market conditions with accuracy. In a competitive or "hot" real estate market, there are generally more buyers than sellers. This will often lead to multiple buyers competing for the same property. As a result, in order to make their offers more attractive, some buyers may offer more than originally planned or eliminate certain contingencies in their offers. In a less competitive or "cool" market there are generally more sellers than buyers, often causing real estate prices to level off or drop, sometimes precipitously. The sales prices of homes being sold as foreclosures and short sales are difficult to anticipate and can affect the value of other homes in the area. Brokers, appraisers, sellers and buyers take these "distressed" property sales and listings into consideration when valuing property. In light of the real estate market's cyclical nature it is important that buyers understand the potential for little or no appreciation in value, or the actual loss in value, of the property they purchase. This Advisory discusses some of the potential risks inherent in changing market conditions.

**B. OFFERING PRICE: AS A BUYER, YOU ARE RESPONSIBLE FOR DETERMINING THE PRICE YOU WANT TO OFFER FOR A PROPERTY.** Although Brokers may provide you with comparable sales data, generally from information published in the local multiple listing service, you should know that the reporting of this data is often delayed and prices may change, up or down, faster than reported sales indicate. All buyers should be sure they are comfortable with the price they are offering or the price they are accepting in a counter offer. You should be aware of and think about the following: (i) If your offer is accepted, the property's value may not increase and may even decrease. (ii) If your offer is accepted, you may have "buyer's remorse" that you paid too much. (iii) If your offer is rejected there can be no guarantee that you will find a similar property at the same price. (iv) If your offer is rejected, you may not be satisfied that the amount you offered was right for you. Only you can determine that your offer was reasonable and prudent in light of the property and your circumstances.

**C. NON-CONTINGENT OFFERS:** Most residential purchase agreements contain contingencies allowing a Buyer within a specified period of time to cancel a purchase if: (i) the Buyer cannot obtain a loan; (ii) is dissatisfied with the property's condition after an inspection;or (iii) if the property does not appraise at a certain value. To make their offers more attractive, buyers will sometimes write offers with few or no contingencies or offer to remove contingencies within a short period of time.In a "hot" market, sellers will sometimes insist that buyers write offers with no contingencies. Broker recommends that buyers do not write non-contingent offers and if you do so, you are acting against Broker's advice. However, if you do write a non-contingent offer these are some of the contractual rights you may be giving up:

1. LOAN CONTINGENCY: If you give up your loan contingency, and you cannot obtain a loan, whether through your fault or the fault of your lender, and as a result, you do not or cannot purchase the property, you may legally be in default under the contract and required to pay damages or forfeit your deposit to the seller.

2. APPRAISAL CONTINGENCY: If you give up your appraisal contingency, and if your lender's (or your own) appraiser or review appraiser does not believe the property is worth what you have agreed to pay for it or your lender will not loan the full amount needed for the purchase because of a low appraisal and as a result, you do not or cannot purchase the property, you may legally be in default under the contract and required to pay damages or forfeit your deposit to the seller. The seller is not obligated to reduce the purchase price to match the appraised value.

3. INSPECTION CONTINGENCY: If you give up your inspection contingency, and you disapprove of the condition and as a result, you do not or cannot purchase the property, you may legally be in default under the contract and required to pay damages or forfeit your deposit to the seller. However, even if you give up your inspection contingency, the Seller may still be obligated to provide you with certain disclosures and information addressing the condition of the property. In some cases, once you receive that information the law gives you an independent right to cancel for a limited period of time.

There is inherent risk in writing a non-contingent offer. Only you, after careful consultation and deliberation with your attorney, accountant, or financial advisor can decide how much risk you are willing to take. IT IS YOUR DECISION ALONE AND CANNOT BE MADE BY YOUR BROKER OR REAL ESTATE AGENT.

**D. BROKER RECOMMENDATIONS:** Broker recommends that you do not write a non-contingent offer, even if you are planning on paying all cash for the property. If you intend to write a non-contingent offer, Broker recommends that, prior to writing the offer, you: (i) review all available seller reports, disclosures, information and documents; (ii) have an appropriate professional inspect the property (even if it is being sold "as is" in its present condition); and (iii) carefully assess your financial position, and risk with your attorney, accountant or financial advisor.

Buyer acknowledges Buyer has read, understands and has received a copy of this Market Condition Advisory.

Buyer _[signature]_ TIMOTHY ALBIANI Date MAY 28, 2010

Buyer _[signature]_ KATHLEEN ALBIANI Date 5-28-10

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form by any means, including facsimile or computerized formats. Copyright © 2008, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ________ Date ________

Agent: Jennifer Quinn Phone: 916.628.6956 Fax: 916.239-2928 Prepared using zipForm® software
Broker: Lyon Real Estate, Downtown 2801 J Street Sacramento, CA 95816


# BUYER REPRESENTATION AGREEMENT
## Non-Exclusive/Not for Compensation
(C.A.R. Form BRNN, Revised 4/07)

1. **RIGHT TO REPRESENT:** TIMOTHY ALBIANI, KATHLEEN ALBIANI ("Buyer") grants LYON REAL ESTATE ("Broker") beginning on (date) ______ and ending: (i) upon written notice by either party, (ii) upon completion of a resulting transaction, or (iii) one year (or ☐ ______) from the beginning date, whichever occurs first ("Representation Period"), the non-exclusive and revocable right, on the terms specified in this Agreement, to represent Buyer in acquiring real property or a manufactured home. Broker agrees to exercise due diligence and reasonable efforts to fulfill the following obligations and, if applicable, authorizations. Broker will perform its obligations under this Agreement through the individual signing for Broker below, who is either Broker individually or an associate-licensee (an individual licensed as a real estate salesperson or broker who works under Broker's real estate license). Buyer agrees that Broker's duties are limited by the terms of this Agreement, including those limitations set forth in paragraphs 3 and 4.
2. **AGENCY RELATIONSHIPS:**
   A. **DISCLOSURE:** If the property being sought includes residential property with one to four dwelling units, Buyer acknowledges receipt of the "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) prior to entering into this Agreement.
   B. **BUYER REPRESENTATION:** Broker will represent, as described in this Agreement, Buyer in any resulting transaction.
   C. ~~(1) POSSIBLE DUAL AGENCY WITH SELLER: (C(1) APPLIES UNLESS C(2)(i) or (ii) is checked below.)~~
   Depending on the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Buyer and a seller, exchange party, or one or more additional parties ("Seller"). Broker shall, as soon as practicable, disclose to Buyer any election to act as a dual agent representing both Buyer and Seller. If Buyer is shown property listed with Broker, Buyer consents to Broker becoming a dual agent representing both Buyer and Seller with respect to those properties. In event of dual agency, Buyer agrees that: (a) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the price offered; (b) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell property at a price less than the listing price; and (c) other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
   OR (2) **SINGLE AGENCY ONLY:** (APPLIES ONLY IF (i) or (ii) is checked below.)
   ☐ (i) **Broker's firm lists properties for sale:** Buyer understands that this election will prevent Broker from showing Buyer those properties that are listed with Broker's firm or from representing Buyer in connection with those properties. In any resulting transaction in which Seller's property is not listed with Broker's firm, Broker will be the exclusive agent of Buyer and not a dual agent also representing Seller.
   OR ☐ (ii) **Broker's firm DOES NOT list property:** Entire brokerage firm only represents buyers and does not list property. In any resulting transaction, Broker will be the exclusive agent of Buyer and not a dual agent also representing Seller.
   D. **OTHER POTENTIAL BUYERS:** Buyer understands that other potential buyers may, through Broker, consider, make offers on or acquire the same or similar properties as those Buyer is seeking to acquire. Buyer consents to Broker's representation of such other potential buyers before, during and after the term of this Agreement, or any extension thereof.
   E. **NON CONFIDENTIALITY OF OFFERS:** Buyer is advised that Seller or Listing Agent may disclose the existence, terms or conditions of Buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the Listing Agent's marketing strategy and the instructions of the Seller.
   F. **CONFIRMATION:** If the Property includes residential property with one to four dwelling units, Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or coincident with Buyer's execution of a Property Contract.
3. **BROKER AUTHORIZATIONS AND OBLIGATIONS:**
   A. Buyer authorizes Broker to: (i) locate and present selected properties to Buyer, present offers authorized by Buyer, and assist Buyer in negotiating for acceptance of such offers; (ii) assist Buyer with the financing process, including obtaining loan pre-qualification; (iii) upon request, provide Buyer with a list of professionals or vendors who perform the services described in the attached Buyer's Inspection Advisory; (iv) order reports, and schedule and attend meetings and appointments with professionals chosen by Buyer; (v) provide guidance to help Buyer with the acquisition of property; and (vi) obtain a credit report on Buyer.
   B. For property transactions of which Broker is aware and not precluded from participating in by Buyer, Broker shall provide and review forms to create a property contract ("Property Contract") for the acquisition of a specific property ("Property"). With respect to such Property, Broker shall: (i) if the Property contains residential property with one to four dwelling units, conduct a reasonably competent and diligent on-site visual inspection of the accessible areas of the Property (excluding any common areas), and disclose to Buyer all facts materially affecting the value or desirability of such Property that are revealed by this inspection; (ii) deliver or communicate to Buyer any disclosures, materials or information received by, in the personal possession of or personally known to the individual signing for Broker below during the Representation Period; and (iii) facilitate the escrow process, including assisting Buyer in negotiating with Seller. Unless otherwise specified in writing, any information provided through Broker in the course of representing Buyer has not been and will not be verified by Broker. Broker's services are performed in compliance with federal, state and local anti-discrimination laws.
4. **SCOPE OF BROKER DUTY:**
   A. While Broker will perform the duties described in paragraph 3B, Broker recommends that Buyer select other professionals, as described in the attached Buyer's Inspection Advisory, to investigate the Property through inspections, investigations, tests, surveys, reports, studies and other available information ("Inspections") during the transaction. Buyer agrees that these inspections, to the extent they exceed the obligations described in paragraph 3B, are not within the scope of Broker's agency duties. Broker informs Buyer that it is in Buyer's best interest to obtain such inspections.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Buyer and Broker acknowledge receipt of a copy of this page.
Buyer's Initials (TA) (KA)
Broker's Initials ( ) ( )
Reviewed by ______ Date ______

Agent: Jennifer Quinn Phone: 916.628.6966 Fax: 916.239-2928 Prepared using zipForm® software
Broker: Lyon Real Estate, Downtown 2801 J Street Sacramento, CA 95816

Buyer: TIMOTHY ALBIANI, KATHLEEN ALBIANI Date: ____________

B. Buyer acknowledges and agrees that Broker: (i) does not decide what price Buyer should pay or Seller should accept; (ii) does not guarantee the condition of the Property; (iii) does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) does not have an obligation to conduct an inspection of common areas or offsite areas of the property; (v) shall not be responsible for identifying defects on the Property, in common areas or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (x) shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

C. Broker owes no duty to inspect for common environmental hazards, earthquake weaknesses, or geologic and seismic hazards. If Buyer receives the booklets titled "Environmental Hazards: A Guide for Homeowners, Buyers, Landlords and Tenants," "The Homeowner's Guide to Earthquake Safety," or "The Commercial Property Owner's Guide to Earthquake Safety," the booklets are deemed adequate to inform Buyer regarding the information contained in the booklets and, other than as specified in 3B above, Broker is not required to provide Buyer with additional information about the matters described in the booklets.

5. **BUYER OBLIGATIONS:**

A. Buyer agrees to timely view and consider properties selected by Broker and to negotiate in good faith to acquire a property. ~~Buyer further agrees to act in good faith toward the completion of any Property Contract entered into in furtherance of this~~ Agreement. Within 5 (or ☐ ____________ ) calendar days from the execution of this Agreement, Buyer shall provide relevant personal and financial information to Broker to assure Buyer's ability to acquire Property. If Buyer fails to provide such information, or if Buyer does not qualify financially to acquire Property, then Broker may cancel this Agreement in writing. Buyer has an affirmative duty to take steps to protect him/herself, including discovery of the legal, practical and technical implications of discovered or disclosed facts, and investigation of information and facts which are known to Buyer or are within the diligent attention and observation of Buyer. Buyer is obligated to and agrees to read all documents provided to Buyer. Buyer agrees to seek desired assistance from appropriate professionals, selected by Buyer, such as those referenced in the attached Buyer's Inspection Advisory.

B. Buyer shall notify Broker in writing (C.A.R. Form BMI) of any material issue to Buyer, such as, but not limited to, Buyer requests for information on, or concerns regarding, any particular area of interest or importance to Buyer ("Material Issues").

C. **Buyer agrees to: (i) indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, costs and attorney fees arising from any incorrect information supplied by Buyer, or from any Material Issues that Buyer fails to disclose in writing to Broker, and (ii) pay for reports, inspections and meetings arranged by Broker on Buyer's behalf.**

D. Buyer is advised to read the attached Buyer's Inspection Advisory for a list of items and other concerns that typically warrant inspections or investigation by Buyer or other professionals.

E. Other Brokers: Buyer represents that Buyer has not entered into an exclusive representation agreement with another broker to represent Buyer in acquiring real property or a manufactured home.

6. **TIME TO BRING LEGAL ACTION:** Legal action for breach of this Agreement, or any obligation arising therefrom, shall be brought no more than two years from the expiration of the Representation Period or the date such cause of action arises, whichever occurs first.

7. **OTHER TERMS AND CONDITIONS.** The following disclosures or addenda are attached:

A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
B. ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
C. ☐ ____________
D. ☐ ____________

8. **ENTIRE AGREEMENT:** All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. This Agreement may not be extended, amended, modified, altered or changed, except in writing signed by Buyer and Broker. In the event that any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any copy, whether by copier, facsimile, NCR or electronic, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

Buyer acknowledges that Buyer has read, understands, received a copy of and agrees to the terms of this Agreement.

Buyer [signature] TIMOTHY ALBIANI Date MAY 28, 2010
Address 4209 LOAZELL CT. City SACRAMENTO, CA. State CA Zip 95864
Telephone (916) 359-4209 Fax (916) 359-4209 E-mail ALBIANI@WINFIRST.COM

Buyer [signature] KATHLEEN ALBIANI Date 5-28-10
Address 4209 Loazell Ct City Sacramento State CA Zip 95864
Telephone 359-4209 Fax ____ E-mail albiani@winfirst.com

Real Estate Broker (Firm) LYON REAL ESTATE DRE License # ____
By (Agent) [signature] JENNIFER QUINN DRE License # 01104601 Date 5-28-2010
Address 9591 LAGUNA SPRINGS City ELK GROVE State CA Zip 95758
Telephone ____ Fax ____ E-mail ____

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ______ Date ______

Timothy Albiani
Kathy Albiani
[illegible]
Sacramento, CA 95864

4835

May 28-10
Date

Pay to the Order of Title Co. $ 5,000.00

five thousand even Dollars

**Bank of America**

[illegible]

For

Kathy Albiani

⑆121000358⑆4835⑈08050⑈06080⑈